IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIJAH MEZA, ANTHONY MEZA, VICTOR MANUEL MEZA and ALMA MEZA, Individually, and MARIBEL MEDRANO as Personal Representative of the Estate of EDMUNDO MEZA, Deceased, | § | |
| Plaintiffs, | § | CIVIL ACTION NO.: 4:26-CV-4586 |
| V. | § | (JURY) |
| JILLIAN MCGOWAN and CITY OF HOUSTON, | § | |
| Defendants. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

# TABLE OF CONTENTS

JURISDICTION....................3
VENUE....................3
PARTIES....................4
STATEMENT OF FACTS....................5
CAUSE OF ACTION AGAINST DEFENDANT JILLIAN MCGOWAN....................8
CAUSE OF ACTION AGAINST DEFENDANT CITY OF HOUSTON....................11
DAMAGES AS TO THE ESTATE OF EDMUNDO MEZA, DECEASED....................15
DAMAGES AS TO PLAINTIFF ELIJAH MEZA....................15
DAMAGES AS TO PLAINTIFF ANTHONY MEZA....................16
DAMAGES AS TO PLAINTIFF ALMA MEZA, INDIVIDUALLY....................16
DAMAGES AS TO PLAINTIFF VICTOR MANUEL MEZA, INDIVIDUALLY....................17
ATTORNEY'S FEES....................17
JURY DEMAND....................17
PRESERVATION....................18
CLAIM FOR PRE-JUDGMENT AND POST-JUDGMENT INTEREST....................18
PRAYER FOR RELIEF....................18

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs ELIJAH MEZA, ANTHONY MEZA, VICTOR MANUEL MEZA and ALMA MEZA, Individually and MARIBEL MEDRANO as Personal Representative of the Estate of EDMUNDO MEZA file this Original Complaint against Defendants JILLIAN MCGOWAN and CITY OF HOUSTON and states:

**I.**

**JURISDICTION**

1. Jurisdiction is proper in this Court because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

2. This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1331 (federal question).

3. This action arises under the United States Constitution as applied to local authorities through 42 U.S.C. § 1983.

**II.**

**VENUE**

Under 28 U.S.C. §1391(b)(2), venue is proper in this Court because the events or omissions giving rise to Plaintiffs' claims occurred within the Southern District of Texas.

**III.**

## PARTIES

1. Plaintiff ELIJAH MEZA is a resident and citizen of the state of Texas. Plaintiff ELIJAH MEZA is the adult son of the decedent, EDMUNDO MEZA.

2. Plaintiff ANTHONY MEZA is a resident and citizen of the state of Texas. Plaintiff ANTHONY MEZA is the adult son of the decedent, EDMUNDO MEZA.

3. Plaintiff ALMA MEZA is a resident and citizen of the state of Texas. Plaintiff ALMA MEZA is the mother of the decedent, EDMUNDO MEZA.

4. Plaintiff VICTOR MANUEL MEZA is a resident and citizen of the state of Coahuila, Mexico and is the father of EDMUNDO MEZA.

5. The decedent, EDMUNDO MEZA, was a resident and citizen of the state of Texas.

6. Plaintiff MARIBEL MEDRANO is a resident and citizen of the state of Texas and is the personal representative of the Estate of Edmundo Meza.

7. Defendant JILLIAN MCGOWAN is an individual residing in Cypress, Harris County, Texas and is a Houston Police Department ("HPD") employee on the occasion in question. This Defendant is being sued in her individual capacity and in her capacity as an HPD officer. This Defendant may be served with summons and complaint by serving Defendant at 19703 Allenwick Hills Ct, Cypress TX 77429 or wherever found.

8. Defendant CITY OF HOUSTON is a municipality located in Harris County, Texas. The City of Houston operates the Houston Police Department ("HPD") and employed individual Defendant McGowan as police officers at all relevant times in question. This Defendant may be served with summons and the complaint by serving the City Attorney, Arturo G. Michel, at 900 Bagby, 4th Floor, Houston, TX 77002.

## IV.

## STATEMENT OF FACTS

1. Plaintiffs incorporate the text of sections V – X into this section as if stated verbatim.

2. Defendant City of Houston ("City") employed Defendant Jillian McGowan and another officer as sworn police officers in the HPD.

3. On the evening of August 7, 2024, at approximately 9:37-9:40pm, Plaintiff Edmundo Meza was sitting outside a gas station with a beverage that he had bought inside the gas station. Defendant McGowan and another HPD officer approached Edmundo Meza and asked for his identifying information. Edmundo Meza provided his first name, last name, and social security number.

4. Defendant McGowan ran Edmundo Meza's identifying information and determined that he had an outstanding warrant. The officers initiated an arrest.

5. During a search incident to the arrest, Defendant McGown and the other

HPD officer discovered that Edmundo Meza had a firearm in the waistband of shorts.

6. Defendant Jillian McGowan and the other HPD officer immediately restrained Edmundo Meza on the ground. Defendant McGowan and the other HPD officer were both physically on top of Edmundo Meza and had his body pinned to the ground.

7. Defendant McGowan forcefully pushed the muzzle of her service weapon directly into Edmundo Meza's torso, and repeatedly shouted, "Don't you fucking move. I will shoot you."

8. Defendant McGowan radioed to other police officers, "Code One. 5700 Werner. I got a suspect with a gun who might be resisting."

9. While Mr. Meza was pinned to the ground with both arms and hands subdued by Defendant McGowan and the other HPD officer, Defendant McGowan fired a single shot into Edmundo Meza torso, piercing Edmundo Meza's lungs and liver.

10. After the shot, Defendant McGowan and the other HPD officer removed the firearm that was still inside Edmundo Meza's waistband.

11. At the time of shooting, Edmundo Meza's weapon was inside his waistband and had not been drawn.

12. Mr. Meza was transported to a hospital where he was pronounced dead approximately one hour later.

13. Defendant McGowan was previously involved in another fatal shooting during her career with HPD. In 2014, Defendant McGowan shot and killed Rufino Lara while responding to an assault investigation. HPD reported that Lara turned around with his hands tucked in his shirt and that McGowan believed he was reaching for a gun. Two witnesses at the time stated that Lara had his hands in the air and was not reaching. The object in Lara's shirt turned out to be a can of beer.

14. At all relevant times, Defendant City of Houston operated and controlled the HPD that employed Defendant McGowan.

15. At all relevant times, Defendant City of Houston was responsible for hiring, training, supervising, disciplining, and retaining its police officers, including Defendant McGowan.

16. At all relevant times, Defendant McGowan was Defendant City of Houston's employee acting in the course and scope of her employment and under color of state law.

17. At all relevant times, Defendant City of Houston promulgated the policies and customs of HPD, which Defendant McGowan executed on the occasion in question. The behavior of Defendant McGowan was carried out pursuant to Defendant City of Houston's policy, pattern of practice, or custom, whether formal or informal.

18. Upon information and belief, Defendant City of Houston encouraged,

condoned, and sanctioned, tacitly or overtly, the misconduct of Defendant McGowan against Edmundo Meza.

19. Defendants' negligent acts and/or omissions, separately and collectively, and otherwise, were a direct or proximate cause of the incident in question and Edmundo Meza's resulting injuries, damages, and wrongful death.

**V.**

**CAUSE OF ACTION AGAINST DEFENDANT JILLIAN MCGOWAN**

1. Plaintiffs reallege the facts stated above as if fully stated here.

2. At all relevant times, Defendant McGowan was a sworn police officer employed with HPD and acting under color of law.

3. Under 42 U.S.C. § 1983, Defendants McGowan, under color of law, deprived Edmundo Meza of his right to be free from unreasonable and excessive force in violation of the Fourth Amendment of the U.S. Constitution.

4. The Fourth Amendment right to be free from unreasonable and excessive is a clearly established constitutional right because "the contours of the right [is] sufficiently clear that a reasonable official would understand that what he is doing violates that right."

5. Defendant McGowan is not entitled to qualified immunity because she knew or reasonably should have known that the actions taken within her sphere of official responsibility would violate Edmundo Meza's clearly established

constitutional rights and failed to act as a reasonable officer would in the same circumstances.

6. Defendant McGowan knew or reasonably should have known her conduct violated Edmundo Meza's constitutional right. Defendant McGowan failed to act as a reasonable officer would under the totality of circumstances.

7. Defendants McGowan deprived Edmundo Meza of his right to be free from unreasonable and excessive force in violation of the Fourth Amendment to the United States Constitution.

8. At all relevant times, (1) Edmundo Meza was pinned to the ground by Defendant McGowan and another HPD officer, (2) Edmundo Meza had both Defendant McGowan and another HPD on top of his back as he was lying on the ground, (3) Edmundo Meza could not access the firearm located in his front waistband because he was pinned to the ground by two officers on top of his back, (4) Defendant McGowan was unsure if Edmundo Meza was even resisting arrest as she told dispatch he "might be resisting," (5) Defendant McGowan was forcefully pushing the barrel of her service weapon into Edmundo Meza's body, (6) Defendant McGowan repeatedly shouted at Edmundo Meza "I'll fucking shoot you," and (7) Defendant McGowan failed to make attempts to de-escalate the situation. Defendant McGowan was aware of the above-mentioned circumstances.

9. At the time Defendant McGowan fired her service weapon, Defendant

McGowan did not have probable cause to believe that Edmundo Meza posed a threat of serious physical harm to herself or others.

10. At the time Defendant McGowan fired her weapon, Edmundo Meza was incapacitated or otherwise incapable of using the firearm in his waistband because he was pinned down to the ground with two HPD officers on top of him and could not access his firearm. At the time Defendant McGowan fired her weapon, Edmundo Meza was functionally unarmed.

11. When Defendant McGowan discharged her service weapon, Edmundo Meza had been physically restrained on the ground, pinned to the ground by two officers and was not reaching for, drawing, or brandishing the firearm in his waistband. He posed no immediate threat of serious bodily injury or death to either officer or to any other person in those moments. Defendant McGowan's use of force against Edmundo Meza was not reasonable and excessive under these circumstances.

12. Defendant McGowan violated Edmundo Meza's Fourth Amendment right under the United States Constitution when Defendant McGowan fired her service weapon into Edmundo Meza's body while the weight and force of both Defendant McGowan and the other officer's bodies restrained Edmundo Meza.

13. As a direct and proximate result of Defendant McGowan's acts and omissions, individually and collectively, Edmundo Meza was deprived of his

physical liberty and suffered damages, including physical injuries to his hip, left elbow, right forearm, and wrists, which ultimately caused his death.

## VI.

## CAUSE OF ACTION AGAINST DEFENDANT CITY OF HOUSTON

1. Plaintiffs reallege the facts stated above as if fully stated here.

2. Municipalities are liable for constitutional violations under 42 U.S.C. § 1983 when the execution of its official policy or custom deprives an individual of his or her constitutionally protected rights.

3. Such municipal liability exists where a city fails to properly train, supervise, and discipline its employees, amounting to deliberate indifference to individual constitutional rights.

4. HPD’s failure to institute any meaningful supervisory or corrective response following McGowan's 2014 fatal shooting—particularly given witness contradictions that paralleled the Edmundo Meza incident—demonstrates deliberate indifference to the foreseeable risk that Defendant McGowan would deploy lethal force in another unjustified circumstances. HPD’s failure to supervise was a proximate cause of the August 7, 2024 constitutional violation.

5. At all relevant times in question, Defendant McGowan was acting pursuant to official policies or customs, whether formal or informal, of Defendant City of Houston, which violates constitutional rights of persons situated like

Edmundo Meza, including one or more of the following:

a. A formal policy, which the Defendant City of Houston officially endorsed;

b. Actions taken or decisions made by Defendant City of Houston officials with final decision-making authority;

c. A practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the Defendant City of Houston's policymaking officials; and/or

d. A failure by Defendant City of Houston's policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with municipal employees.

6. At all relevant times in question, Defendant City of Houston had a duty to properly train, supervise, and discipline its police officers, including Defendant McGowan. Defendant City of Houston breached its duty by:

a. Improperly training, authorizing, encouraging, and/or directing officers on proper use of force;

b. Failing to investigate officers for violations of policy related to unlawful arrests and use of unreasonable or excessive force; and

c. Failing to discipline officers for violations of policy related to unlawful arrests and/or use of unreasonable or excessive force.

7. The misconduct of Defendant McGowan, as described above, was carried out pursuant to Defendant City of Houston's policy, pattern of practice, or custom, whether formal or informal, in its Police Department, which violated constitutional rights of persons situated as that of Edmundo Meza. Defendant City

of Houston direct encouragement of the type of misconduct at issue by failing to adequately train, supervise, investigate, and control its officer amounts to deliberate indifference to Edmundo Meza's constitutional rights.

8. As a matter of policy and practice, the HPD facilitated the very type of misconduct at issue by failing to adequately punish and discipline prior instances of similar conduct, thereby leading officers of the HPD to believe their actions will never be scrutinized, which encouraged future abuses such as those that affected Edmundo Meza. Specifically, HPD officers, who are accused of unlawful arrests, excessive force, or other civil rights violations, can be confident they will not be investigated in earnest.

9. Specifically, upon information and belief, HPD's training materials governing the use of deadly force failed to: provide clear instruction on when deadly force is impermissible once a suspect is physically controlled and poses no immediate threat; and provide training specific to contact-distance muzzle placement and the heightened risk of negligent or unjustified discharge that such placement creates.

10. Municipal policymakers were aware of, and by their inaction, condoned and facilitated the failure of HPD to properly investigate and discipline officers who have engaged in unlawful arrests and excessive force or otherwise violated the civil rights of citizens.

11. Defendant City of Houston failed to adequately train its police officers in the constitutional limits of deadly force when a suspect is physically subdued and not actively reaching for a weapon.

12. The inadequate training was the direct and proximate cause of the constitutional violation in this case. Had Defendant McGowan been adequately trained in each of the foregoing areas, the decision to press her muzzle against Edmundo Meza's abdomen and fire while he was pinned and not actively reaching for the weapon would have been recognized as objectively unreasonable and would not have occurred. The City's failure to train its officers in these respects was the moving force behind the deprivation of Edmundo Meza's Fourth Amendment rights.

13. As a result of Defendant City's failure to adequately train, Defendant McGowan used excessive force towards Plaintiff on the occasion in question.

14. Defendant City encouraged, condoned, and sanctioned, tacitly or overtly, the behavior of Defendant McGowan, by failing to adequately train, investigate, supervise, and discipline its police officers, as evidenced by the actions and omissions of Defendant McGowan.

15. As a direct and proximate result of Defendant City's acts and omissions, Edmundo Mezo was deprived of his physical liberty and suffered damages.

**VI.**

**DAMAGES AS TO THE ESTATE OF EDMUNDO MEZA, DECEASED**

1. Plaintiff incorporates by reference the allegations of the previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

2. Plaintiff Maribel Medrano is the Personal Representative of the late Edmundo Meza and his Estate. As the Personal Representative, Plaintiff Maribel Medrano is entitled to collect compensation on behalf of the late Edmundo Meza for certain damages he suffered as a result of the occurrence in question.

3. Edmundo Meza’s damages include conscious physical pain and suffering and mental anguish, reasonable and necessary healthcare expenses, and reasonable and funeral and burial expenses.

**VII.**

**DAMAGES AS TO PLAINTIFF ELIJAH MEZA**

1. Plaintiffs incorporate by reference the allegations of the previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

2. Plaintiff Elijah Meza is the adult son of the decedent, Edmundo Meza. As a result of the death of his father, Elijah Meza suffered severe mental anguish in the past, which in all reasonable probability will continue in the future; and loss of the companionship, society, services, assistance, support, affection, consortium, familial relationship, comfort, love, and care in the past and which in all probability

will continue in the future; loss of pecuniary in the past and that in all reasonable probability will continue in the future; and loss of inheritance.

## VIII.

## DAMAGES AS TO PLAINTIFF ANTHONY MEZA

1. Plaintiffs incorporate by reference the allegations of the previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

2. Plaintiff Anthony Meza is the adult son of the decedent, Edmundo Meza. As a result of the death of his father, Elijah Meza suffered severe mental anguish in the past, which in all reasonable probability will continue in the future; and loss of the companionship, society, services, assistance, support, affection, consortium, familial relationship, comfort, love, and care in the past and which in all probability will continue in the future; loss of pecuniary in the past and that in all reasonable probability will continue in the future; and loss of inheritance.

## IX.

## DAMAGES AS TO PLAINTIFF ALMA MEZA, INDIVIDUALLY

1. Plaintiffs incorporate by reference the allegations of the previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

2. As a result of the death of Edmundo Meza, Plaintiff Alma Meza is the mother of Edmundo Meza. Plaintiff Alma Meza suffered loss of the companionship, society, affection, consortium, emotional support, companionship, familial

relationship, comfort, love, and care which Plaintiff would have enjoyed between herself and Edmundo Meza.

## X.

## DAMAGES AS TO PLAINTIFF VICTOR MANUEL MEZA, INDIVIDUALLY

1. Plaintiffs incorporate by reference the allegations of the previous paragraphs of this Complaint as if each were fully set forth herein in their entirety.

2. As a result of the death of Edmundo Meza, Plaintiff Victor Manuel Meza is the father of Edmundo Meza. Plaintiff Victor Manuel Meza suffered loss of the companionship, society, affection, consortium, emotional support, companionship, familial relationship, comfort, love, and care which Plaintiff would have enjoyed between himself and Edmundo Meza.

## XI.

## ATTORNEY'S FEES

Plaintiffs seek reasonable attorney's fees as provided by 42 U.S.C. § 1988(b) for claims arising under 42 U.S.C. § 1983.

## XII.

## JURY DEMAND

Plaintiffs respectfully request a jury trial.

**XIII.**

**PRESERVATION**

Defendants are hereby given notice that any document or other material, including electronically stored information, that may possibly be evidence or relevant to any issue in this case is to be preserved in its present form until this litigation is concluded.

**XIV.**

**CLAIM FOR PRE-JUDGMENT AND POST-JUDGMENT INTEREST**

Plaintiffs claim pre- and post-judgment interest in accordance with applicable law.

**XV.**

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon final trial, Plaintiffs recover all their damages as specified above from Defendants, jointly and severally, plus costs of Court, pre-judgment and post-judgment interest at the legal rate, attorneys' fees, as authorized by 42 U.S.C. § 1988, and have such other and further relief, general and special, at law and in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

TURLEY LAW FIRM

*/s/ Lacey Turley Most*
Lacey Turley Most
State Bar No. 24093225
6440 North Central Expressway
1000 Turley Law Center
Dallas, Texas 75206
Telephone No. 214/691-4025
Telecopier No. 214/361-5802
Email: laceym@wturley.com
davette@wturley.com

ATTORNEY FOR PLAINTIFFS